## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUKES BRIDGE LLC : | CIVIL ACTION |
| Plaintiff : | |
| v. : | NO. 10 CIV 9030 |
| MARCOS T. MOLINA; : | |
| RAFAEL R. NINO, Individually and as : Original Trustee of the Marcos Molina : Irrevocable Life Insurance Trust dated : September 7, 2007 and The 2008 Marcos : Molina ILIT dated March 20, 2008; : | |
| MARCOS MOLINA IRREVOCABLE : LIFE INSURANCE TRUST DATED : SEPTEMBER 7, 2007; : | |
| THE 2008 MARCOS MOLINA ILIT : DATED MARCH 20, 2008; : | |
| ROSTER FINANCIAL; : | |
| RAND BROKERAGE; : | |
| RAND GROUP BROKERAGE; : | |
| BEDIS ZORMATI, Individually and as an : agent of Rand Group Brokerage and/or : Metropolitan Life Insurance Company; : and : | |
| MANO ENTERPRISES, INC. : | |
| Defendants. : | |



### VERIFIED COMPLAINT

Plaintiff, Dukes Bridge LLC, by and through its undersigned attorneys, files this Verified

Complaint against the Defendants, Marcos T. Molina, Rafael R. Nino, Individually and as

Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007

and The 2008 Marcos Molina ILIT dated March 20, 2008, the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, The 2008 Marcos Molina ILIT dated March 20, 2008, Roster Financial, Rand Brokerage, Rand Group Brokerage, Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company, and Mano Enterprises, Inc., and, in support thereof, avers as follows:

## PARTIES

1.      Plaintiff Dukes Bridge LLC ("Dukes") is a limited liability company with a business address of 1055 Washington Boulevard, 8th Floor, Stamford, Connecticut 06901.

2.      Upon information and belief, Defendant Marcos Molina ("Molina" or "Insured") is an adult individual resident of the State of New York with mailing addresses of 212-29 Hillside Avenue, Queens, New York 11427 and 212-29 Hillside Avenue, Bellrose Manor, New York 10128.

3.      Defendant Rafael R. Nino was the original Trustee ("Original Trustee") for both the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 and The 2008 Marcos Molina ILIT dated March 20, 2008 and is an adult individual ("Nino") resident of the State of New York with mailing addresses of 184-02 Hillside Avenue, Jamaica, New York 11432 and 688 Lafayette Avenue, Uniondale, New York 11553-2231.

4.      Defendant Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 is a trust organized under the laws of and having its sole and principal place of business located in the State of Delaware.

5.      Defendant The 2008 Marcos Molina ILIT dated March 20, 2008 is a trust organized under the laws of and having its sole and principal place of business located in the State of Delaware.

2

6.     Upon information and belief, Roster Financial, acting through its agent, David Chauinard ("Chauinard"), is a company organized under the State of New Jersey with a mailing address of 1000 Voorhees Drive, Suite B, Voorhees, New Jersey 08043.

7.     Upon information and belief, Defendant Rand Brokerage, acting through its agent, Shaya Ilowitz ("Ilowitz"), is a company organized under the State of New York with a mailing address of 1445 44th Street, Brooklyn, New York 11219.

8.     Upon information and belief, Defendant Rand Group Brokerage, acting through its agent, Bedis Zormati ("Zormati"), is a company organized under the State of New York with a mailing address of 420 Lexington Avenue, 15th Floor, New York, New York 10170.

9.     Upon information and belief, Defendant Zormati is an adult individual resident of the State of New York with a mailing address of 290 Collins Avenue, Apartment 5H, Mount Vernon, New York 10552.

10.    Upon information and belief, Defendant Mano Enterprises, Inc. ("Mano") is a company organized on June 29, 2010 under the State of New York with the same mailing address as Molina, 212-29 Hillside Avenue, Suite 5E-E, Queens Village, New York 11427.

## JURISDICTION

11.    This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

## VENUE

12.    Venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2), as the events giving rise to the claim occurred within this District.

3

## FACTUAL ALLEGATIONS

### Issuance of the Union Central Life Policy

13.     Upon information and belief, Molina established an irrevocable trust under the laws of the State of New York, naming Nino as the Original Trustee.

14.     Subsequently, on or about September 7, 2007, Molina utilized the New York trust to establish and incorporate into the newly established irrevocable trust known as the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 (the "Trust").

15.     On or about September 28, 2007, The Union Central Life Insurance Company ("Union Central") issued a life insurance policy to the Trust insuring the life of Molina for the face amount of $5,000,000.00 under Policy No. U000039438 (the "Union Central Life Policy").

16.     On or about October 8, 2007, the Original Trustee resigned and appointed Stan Miller (the "Second Trustee") as the Trustee for the Trust.

### Financing of the Union Central Life Policy Premiums

17.     On or about October 9, 2007, with the informed knowledge and consent of Molina and Nino, the Trust and Aqua Blue Wealth Management, LLC ("Aqua Blue") entered into a Specialty Finance Loan Agreement (the "Union Central Loan Agreement") whereby Aqua Blue made loans for the benefit of Molina, Nino and the Trust.

18.     Simultaneous with the execution of the Union Central Loan Agreement, the Trust and Aqua Blue entered into an Assignment Agreement, which assigned the Union Central Life Policy as collateral to the Union Central Loan Agreement, a Promissory Note in the amount of $464,834.00, and a Security Agreement as collateral security for the performance by the Trust of any obligations under the Union Central Loan Agreement.

19.     Execution of the Assignment Agreement, Promissory Note, and Security Agreement by the Trust were condition precedents to Aqua Blue making any loans to the Trust.

4

20.     Pursuant to the Union Central Loan Agreement, any failure by the Trust to pay when due the principal of and interest on any loans provided by Aqua Blue constituted an "Event of Default."

21.     Upon the occurrence of an Event of Default under the Union Central Loan Agreement, such as nonpayment of the principal and interest, the amounts were immediately due and payable.

22.     In reliance upon the terms and conditions of the Union Central Loan Agreement, the Assignment Agreement, the Promissory Note and the Security Agreement, Aqua Blue provided loans to the Trust as per the terms of the Union Central Loan Agreement.

23.     On or about September 3, 2008, Aqua Blue filed a UCC Financing Statement, which indicated that Aqua Blue maintained a security interest in all assets of the Trust, including the Union Central Life Policy. See the Certification of David Girardot, attached hereto as Exhibit A.

### Issuance of the MetLife Life Policy

24.     Upon information and belief, Molina established an irrevocable trust under the laws of the State of New York, naming Nino as the trustee.

25.     Subsequently, on or about March 20, 2008, Molina utilized the New York trust to establish and incorporate into the newly established irrevocable trust known as The 2008 Marcos Molina ILIT dated March 20, 2008 (the "2008 Trust").

26.     Upon information and belief, Nino resigned as the trustee and appointed the Second Trustee as Trustee of the 2008 Trust.

27.     On or about March 24, 2008, the Metropolitan Life Insurance Company ("MetLife") issued a life policy to the 2008 Trust insuring the life of Molina for the face amount of $5,000,000.00 under Policy No. 208097103MLU (the "MetLife Life Policy").

5

### Financing of the MetLife Life Policy Premiums

28.     On or about May 8, 2008, with the informed knowledge and consent of Molina and Nino, the 2008 Trust and Aqua Blue entered into a Specialty Finance Loan Agreement (the "MetLife Loan Agreement") whereby Aqua Blue made loans for the benefit of Molina and the 2008 Trust.

29.     Simultaneous with the execution of the MetLife Loan Agreement, the 2008 Trust and Aqua Blue entered into an Assignment Agreement, which assigned the MetLife Life Policy as collateral to the MetLife Loan Agreement, a Promissory Note in the amount of $349,705.00, and a Security Agreement as collateral security for the performance by the 2008 Trust of any obligations under the MetLife Loan Agreement

30.     Execution of the Assignment Agreement, Promissory Note, and Security Agreement by the 2008 Trust were condition precedents to Aqua Blue making any loans to the 2008 Trust.

31.     Pursuant to the MetLife Loan Agreement, any failure by the 2008 Trust to pay when due the principal of and interest on any loans provided by Aqua Blue constituted an "Event of Default."

32.     Upon the occurrence of an Event of Default under the MetLife Loan Agreement, such as nonpayment of the principal and interest, the amounts were immediately due and payable.

33.     In reliance upon the terms and conditions of the MetLife Loan Agreement, the Assignment Agreement, the Promissory Note and the Security Agreement, Aqua Blue provided loans to the 2008 Trust as per the terms of the MetLife Loan Agreement.

34.     On or about September 9, 2008, Aqua Blue filed a UCC Financing Statement, which indicated that Aqua Blue maintained a security interest in all assets of the 2008 Trust, including the MetLife Life Policy. See Exhibit A.

### Transfer of the Union Central and MetLife Loan Agreements

35.     By way of a Release and Settlement Agreement dated November 2, 2009, Aqua Blue assigned the Union Central and MetLife Loan Agreements (collectively referred to as the "Loan Agreements") and all other documents involving the Union Central Life Policy and the MetLife Life Policy (collectively referred to as the "Life Policies") to Dukes.

36.     As a result of the assignment, Dukes assumed all of Aqua Blue's rights, remedies and obligations under the Loan Agreements, the Assignment Agreements, the Promissory Notes, the Security Agreements and all other documents involving the Loan Agreements and Life Policies as security for the Loan Agreements.

37.     On or about December 28, 2009, Dukes filed a UCC Financing Statement Amendment changing the name on the prior UCC Financing Statement filed by Aqua Blue so as to evidence Dukes' security interest in all assets of the Trust, including the Union Central Life Policy. See Exhibit A.

38.     On or about December 29, 2009, Dukes filed a UCC Financing Statement Amendment changing the name on the prior UCC Financing Statement filed by Aqua Blue so as to evidence Dukes' security interest in all assets of the 2008 Trust, including the MetLife Life Policy. See Exhibit A.

### Maturity of the Union Central Loan Agreement

39.     The maturity date of the Union Central Loan Agreement was November 9, 2009, at which time the principal loan amount and interest were due and owing to Dukes. See Exhibit A.

40.     As of November 9, 2009, the obligations under the Union Central Loan Agreement had not been repaid.  See Exhibit A.

41.     On or about February 19, 2010, the Trust, Original Trustee, Dukes and the Second Trustee entered into a Forbearance Agreement whereby the Original Trustee agreed to pay the sum of $605,418.13 to Dukes so as to satisfy the obligations under the Union Central Loan Agreement.  See Exhibit A.

42.     Pursuant to the Forbearance Agreement, if the Original Trustee failed or refused to pay all of the agreed upon sum to Dukes within thirty (30) days of the date of the Forbearance Agreement,

      1)     the Forbearance period shall end immediately and without notice;

      2)     the unpaid balance of principal and interest as originally set forth in the [Union Central] loan agreement and subsequent payments and interest accruals shall be accelerated and become immediately due and payable in full;

      3)     [Dukes] shall be free to enforce all of its rights and remedies under the [Union Central] Loan Documents;

      4)     such event shall be considered an Event of Default under the [Union Central] Loan Documents, and

      5)     [Dukes] shall be free to demand payment of any and all additional charges provided for under the [Union Central] Loan Documents, including, without limitation, any and all Default Interest Charges, attorney's fees and costs of collection.

43.     Simultaneous with the Forbearance Agreement, Molina, the Original Trustee, the Second Trustee and Dukes entered into a Non-Contravention Agreement, which set forth certain conditions to the Forbearance Agreement and further defined the relationship between the parties.  See Exhibit A.

8

44.     Pursuant to the Non-Contravention Agreement, Molina and the Original Trustee agreed that:

> they [would] not surrender in whole or in part the [Union Central] Life Policy, or cause to permit any attachment, restatement, supplement, endorsement, rider or other modification to, or waiver of, or exercise of, any of the rights of the Insured or the Owner under the [Union Central] Life Policy. ...

45.     Molina and the Original Trustee further agreed under the Non-Contravention Agreement that they would not "take any action that would change or modify the beneficiary(ies) of the [Union Central] Life Policy without the prior, written consent of the [Second] Trustee" or "communicate verbally or in writing with the Insurer without the prior written consent of the [Second] Trustee."

46.     In the event of a breach by Molina and/or the Original Trustee of the Non-Contravention Agreement, Molina agreed to indemnify and hold Dukes harmless from "any and all loss, liability or damage" resulting therefrom, including all legal fees and expenses.

47.     Dukes informed Molina, the Original Trustee, Nino, and the Trust on several occasions that the principal amount of the Union Central Loan Agreement, as well as finance charges and interest, were due and owing.  See Exhibit A.

48.     As of this date, Molina, the Original Trustee, Nino and the Trust have failed to fully satisfy their payment obligations pursuant to the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement, and an amount in excess of $832,769.85 is currently due and owing to Dukes.  See Exhibit A.

### Sale of the Union Central Life Policy

49.     On or about June 10, 2010, Dukes provided the Trust, Molina and Nino, among others, with notice of the breaches of their obligations to repay the loan under the Union Central

Loan Agreement and that Dukes intended to sell the Union Central Life Policy at an auction so as to satisfy said obligations. See Exhibit A.

50.    On August 6, 2010, Dukes purchased the Union Central Life Policy at an auction for the amount of $739,582.95 and obtained a Bill of Sale, which evidenced the purchase. See Exhibit A.

51.    By way of its purchase, Dukes became the lawful owner of the Union Central Life Policy.

### Maturity of the MetLife Loan Agreement

52.    The maturity date of the MetLife Loan Agreement was June 22, 2010, at which time the principal loan amount and interest were due and owing to Dukes. See Exhibit A.

53.    As of June 22, 2010, the obligations under the MetLife Loan Agreement had not been repaid. See Exhibit A.

54.    Dukes informed Molina, the Original Trustee, Nino and the 2008 Trust on several occasions that the principal amount of the MetLife Loan Agreement, as well as finance charges and interest, were due and owing to Dukes. See Exhibit A.

55.    As of this date, Molina, the Original Trustee, Nino and the 2008 Trust have failed to fully satisfy their payment obligations pursuant to the MetLife Loan Agreement, and an amount in excess of $590,681.16 is currently due and owing to Dukes. See Exhibit A.

### Sale of the MetLife Life Policy

56.    On or about August 10, 2010, Dukes provided the 2008 Trust, Molina, Nino, and Zormati, among others, with notice of the breaches of their obligations to repay the loan under the MetLife Loan Agreement and that Dukes intended to sell the MetLife Life Policy at an auction so as to satisfy said obligations. See Exhibit A.

57.     On September 2, 2010, Dukes purchased the MetLife Life Policy at an auction for the amount of $573,478.21 and obtained a Bill of Sale, which evidenced the purchase. See Exhibit A.

58.     By way of its purchase, Dukes became the lawful owner of the MetLife Life Policy.

### Unauthorized Change in Ownership of the Life Policies

59.     Upon information and belief, despite Dukes' security interest in and lawful ownership of the Union Central Life Policy via its August 6, 2010 purchase, Molina, the Original Trustee, Nino, Roster Financial, through its agent, Chauinard, Rand Brokerage, through its agent, Ilowitz, Rand Group Brokerage, through its agent, Zormati, and/or Zormati individually and/or as an agent of MetLife, without the knowledge, consent or authorization of Dukes and in breach of the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement, sold and/or granted ownership interest in the Union Central Life Policy to Mano, a company who address is the same as Molina's address. See Exhibit A.

60.     Upon information and belief, despite Dukes' security interest in and lawful ownership of the MetLife Life Policy via its September 2, 2010 purchase, Molina, the Original Trustee, Nino, Roster Financial, through its agent, Chauinard, Rand Brokerage, through its agent, Ilowitz, Rand Group Brokerage, through its agent, Zormati, and/or Zormati individually and/or as an agent of MetLife, without the knowledge, consent or authorization of Dukes and in breach of the MetLife Loan Agreement, sold and/or granted ownership interest in the MetLife Life Policy to Mano, a company who address is the same as Molina's address. See Exhibit A.

61.     Dukes has satisfied all conditions precedent to the commencement of this action or such conditions have been waived by the Defendants.

## CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT – UNION CENTRAL LOAN AGREEMENT, FORBEARANCE AGREEMENT AND NON-CONTRAVENTION AGREEMENT

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007**

62.     Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

63.     Molina, Nino, and Original Trustee, through the Trust, entered into the Union Central Loan Agreement with Aqua Blue.

64.     As collateral for the Union Central Loan Agreement, the Defendants assigned the Union Central Life Policy to Aqua Blue.

65.     The Defendants failed to fulfill their duties and obligations under the Union Central Loan Agreement and, therefore, are in breach of the same.

66.     Specifically, the Defendants breached the Union Central Loan Agreement by failing and/or refusing to pay the principal amount, plus interest and finances charges, to Dukes upon the Union Central Loan Agreement's maturity date.

67.     Molina and Nino, through the Trust and Original Trustee, entered into a Forbearance Agreement and Non-Contravention Agreement with Dukes to satisfy their obligations under the Union Central Loan Agreement.

68.     The Defendants failed to fulfill their duties and obligations under the Forbearance Agreement and Non-Contravention Agreement and, therefore, are in breach of the same.

69.     Specifically, the Defendants breached the Forbearance Agreement and Non-Contravention Agreement by failing and/or refusing to pay the forbearance amount as per the terms of the Forbearance Agreement and Non-Contravention Agreement.

70.     The Defendants further breached the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement by selling and/or granting an ownership interest in the Union Central Life Policy to a third party without the knowledge, consent or authorization of Dukes.

71.     As a direct and proximate result of the Defendants' breaches of the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement, Dukes has been damaged in an amount in excess of $832,769.85, exclusive of costs and expenses.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT II – QUASI-CONTRACT/UNJUST ENRICHMENT (Union Central Life Policy)

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007**

72.     Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

73.     Dukes provided services and monies at the direct request and for the direct benefit of the Defendants, fully expecting to receive compensation for the same.

74.     The Defendants have retained the benefit of Dukes' services and monies.

75.     The Defendants' retention of the benefits of Dukes' services and monies without compensating for the same would be inequitable and unjust.

76.     Dukes is entitled to the value of the services and monies provided for the Defendants' benefit, which exceeds $832,769.85.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT III – PROMISSORY ESTOPPEL (Union Central Life Policy)

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007**

77.     Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

78.     The Defendants promised that they would pay to Dukes the principal amount, plus interest and finances charges, of the Union Central Loan Agreement upon its maturity.

79.     The Defendants further promised that they would not sell or transfer the Union Central Life Policy or in anyway jeopardize the collateral to the Union Central Loan Agreement.

80.     The Defendants made such promises with the intent to create a legally binding obligation and to induce Aqua Blue to enter into the Union Central Loan Agreement.

81.     Aqua Blue reasonably relied, to its detriment, on the promises made by the Defendants and entered into the Union Central Loan Agreement.

82.     The Defendants promised that they would pay to Dukes the forbearance amount as per the terms of the Forbearance Agreement and Non-Contravention Agreement.

83.     The Defendants further promised that they would not sell or transfer the Union Central Life Policy or in anyway jeopardize Dukes' secured interest in the Union Central Life Policy.

84.     The Defendants made such promises with the intent to create a legally binding obligation and to induce Dukes to enter into the Forbearance Agreement and Non-Contravention Agreement.

85.     Dukes reasonably relied, to its detriment, on the promises made by the Defendants and entered into the Forbearance Agreement and Non-Contravention Agreement.

86.     The Defendants failed to maintain such promises.

87.     Dukes has been damaged as a result of the Defendants' failure to maintain their promises.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT IV – CONVERSION/MISAPPROPRIATION OF THE UNION CENTRAL LIFE POLICY

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, Roster Financial, Rand Brokerage, Rand Group Brokerage, and Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company**

88.     Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

89.     Dukes maintains a collateral interest in the Union Central Life Policy, as the Union Central Life Policy secured the Union Central Loan Agreement.  See Exhibit A.

90.     Further, Dukes maintains an ownership interest in the Union Central Life Policy, as it legally purchased the Union Central Life Policy after the Defendants defaulted on the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement.  See Exhibit A.

91.     Defendants intentionally interfered with Dukes' ownership interests in the Union Central Life Policy by selling and/or transferring the Union Central Life Policy to a third party.

92.     The Defendants converted to the Defendants' own use an interest, specifically the Union Central Life Policy, that is owned by Dukes.

93.     The Defendants' acts have deprived Dukes of its interests in the Union Central Life Policy.

94.     As a direct and proximate result of Defendants' actions, Dukes has been damaged in the amount of $832,769.85.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007, Roster Financial, Rand Brokerage, Rand Group Brokerage, and Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT V – INJUNCTIVE RELIEF (Union Central Life Policy)

### Dukes Bridge LLC v. Mano Enterprises, Inc.

95.     Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

96.     Dukes has a lawful interest in the Union Central Life Policy, as it was the security for the Union Central Loan Agreement.

97.     Further, Dukes is the legal owner of the Union Central Life Policy, as it purchased the Union Central Life Policy at an auction to satisfy the Trust and Original Trustee's outstanding obligations under the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement.  See Exhibit A.

98.     Upon information and belief, Defendants Molina, the Original Trustee, Nino, Roster Financial, through its agent, Chauinard, Rand Brokerage, through its agent, Ilowitz, Rand Group Brokerage, through its agent, Zormati, and/or Zormati individually and/or as an agent of MetLife have sold and/or transferred Dukes' ownership interest in the Union Central Life Policy to Mano, a company who address is the same as Molina's address.  See Exhibit A.

99.     Dukes, as the legal owner of the Union Central Life Policy, never provided said Defendants with its consent or authorization to sell and/or transfer the Union Central Life Policy. See Exhibit A.

100.    If Mano is permitted to retain an ownership interest in the Union Central Life Policy, Dukes will have no adequate remedy at law for the Defendants' breaches of the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement.  Thus, Dukes will be irreparably harmed.

101.    The threat of immediate and irreparable injury to Dukes necessitates the issuance of a preliminary injunction to hold the status quo, preventing Mano from transferring,

17

dissipating, assigning, conveying, encumbering or otherwise disposing of the Union Central Life Policy.

102.    Further, Dukes requests that the Union Central Life Policy ownership interests be returned to Dukes as its lawful owner.

103.    Dukes, pursuant to the Bill of Sale, which evidences its purchase and ownership of the Union Central Life Policy, has a reasonable likelihood of success in this matter.

104.    Therefore, a preliminary injunction should be issued to prevent Mano from transferring, dissipating, assigning, conveying, encumbering or otherwise disposing of the Union Central Life Policy and ordering that said Policy's ownership interests be returned to Dukes.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enjoin Defendant Mano Enterprises, Inc. from transferring, dissipating, assigning, conveying, encumbering or otherwise disposing of the Union Central Life Policy and order that the Union Central Life Policy ownership interests be returned to Dukes, and such other relief as this Court deems just and proper.

## COUNT VI - BREACH OF CONTRACT – METLIFE LOAN AGREEMENT

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and The 2008 Marcos Molina ILIT dated March 20, 2008**

105.    Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

106.    Molina, Nino, and Original Trustee, through the 2008 Trust, entered into the MetLife Loan Agreement with Aqua Blue.

107.    As collateral for the MetLife Loan Agreement, the Defendants assigned the MetLife Life Policy to Aqua Blue.

18

108.    The Defendants failed to fulfill their duties and obligations under the MetLife Loan Agreement and, therefore, are in breach of the same.

109.    Specifically, the Defendants breached the MetLife Loan Agreement by failing and/or refusing to pay the principal amount, plus interest and finances charges, to Dukes upon the MetLife Loan Agreement's maturity date.

110.    The Defendants further breached the MetLife Loan Agreement by selling and/or granting ownership interest in the MetLife Life Policy to a third party without the knowledge, consent or authorization of Dukes.

111.    As a direct and proximate result of the Defendants' breaches of the MetLife Loan Agreement, Dukes has been damaged in an amount in excess of $590,681.16, exclusive of costs and expenses.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and The 2008 Marcos Molina ILIT dated March 20, 2008 in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT VII – QUASI-CONTRACT/UNJUST ENRICHMENT (MetLife Life Policy)

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and The 2008 Marcos Molina ILIT dated March 20, 2008**

112.    Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

113.    Dukes provided services and monies at the direct request and for the direct benefit of the Defendants, fully expecting to receive compensation for the same.

19

114.    The Defendants have retained the benefit of Dukes' services and monies.

115.    The Defendants' retention of the benefits of Dukes' services and monies without compensating for the same would be inequitable and unjust.

116.    Dukes is entitled to the value of the services and monies provided for the Defendants' benefit, which exceeds $590,681.16.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and The 2008 Marcos Molina ILIT dated March 20, 2008 in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT VIII – PROMISSORY ESTOPPEL (MetLife Life Policy)

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and The 2008 Marcos Molina ILIT dated March 20, 2008**

117.    Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

118.    The Defendants promised that they would pay to Dukes the principal amount, plus interest and finances charges, of the MetLife Loan Agreement upon its maturity.

119.    The Defendants further promised that they would not sell or transfer the MetLife Life Policy or in anyway jeopardize the collateral to the MetLife Loan Agreement.

120.    The Defendants made such promises with the intent to create a legally binding obligation and to induce Aqua Blue to enter into the MetLife Loan Agreement.

121.    Aqua Blue reasonably relied, to its detriment, on the promises made by the Defendants and entered into the MetLife Loan Agreement.

122.    The Defendants failed to maintain such promises.

123.    Dukes has been damaged as a result of the Defendants' failure to maintain their promises.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and The 2008 Marcos Molina ILIT dated March 20, 2008 in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT IX – CONVERSION/MISAPPROPRIATION OF THE METLIFE LIFE POLICY

**Dukes Bridge LLC v. Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, The 2008 Marcos Molina ILIT dated March 20, 2008, Roster Financial, Rand Brokerage, Rand Group Brokerage, and Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company**

124.    Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

125.    Dukes maintains a collateral interest in the MetLife Life Policy, as the MetLife Life Policy secured the MetLife Loan Agreement.  See Exhibit A.

126.    Further, Dukes maintains an ownership interest in the MetLife Life Policy, as it legally purchased the MetLife Life Policy after the Defendants defaulted on the MetLife Loan Agreement. See Exhibit A.

127.    Defendants intentionally interfered with Dukes' ownership interest in the MetLife Life Policy by selling and/or transferring the MetLife Life Policy to a third party.

128.    The Defendants converted to the Defendants' own use a secured interest, specifically the MetLife Life Policy, that is owned by Dukes.

21

129.   The Defendants' acts have deprived Dukes of its ownership interest in the MetLife Life Policy.

130.   As a direct and proximate result of Defendants' actions, Dukes has been damaged in the amount of $590,681.16.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Marcos T. Molina, Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, The 2008 Marcos Molina ILIT dated March 20, 2008, Roster Financial, Rand Brokerage, Rand Group Brokerage, and Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT X – INJUNCTIVE RELIEF (MetLife Life Policy)
### Dukes Bridge LLC v. Mano Enterprises, Inc.

131.   Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

132.   Dukes has a lawful interest in the MetLife Life Policy, as it was the security for the MetLife Loan Agreement.

133.   Further, Dukes is the legal owner of the MetLife Life Policy, as it purchased the MetLife Life Policy at an auction to satisfy the 2008 Trust and Original Trustee's outstanding obligations under the MetLife Loan Agreement. See Exhibit A.

134.   Upon information and belief, Defendants Molina, the Original Trustee, Nino, Roster Financial, through its agent, Chauinard, Rand Brokerage, through its agent, Ilowitz, Rand Group Brokerage, through its agent, Zormati, and/or Zormati individually or as an agent of

MetLife have sold and/or transferred Dukes' ownership interests in the MetLife Life Policy to Mano, a company who address is the same as Molina's address. See Exhibit A.

135.    Dukes, as the legal owner of the MetLife Life Policy, never provided said Defendants with its consent or authorization to sell and/or transfer the MetLife Life Policy. See Exhibit A.

136.    If Mano is permitted to retain an ownership interest in the MetLife Life Policy, Dukes will have no adequate remedy at law for the Defendants' breaches of the MetLife Loan Agreement. Thus, Dukes will be irreparably harmed.

137.    The threat of immediate and irreparable injury to Dukes necessitates the issuance of a preliminary injunction to hold the status quo, preventing Mano from transferring, dissipating, assigning, conveying, encumbering or otherwise disposing of the MetLife Life Policy.

138.    Further, Dukes requests that the MetLife Life Policy ownership interests be returned to Dukes as its lawful owner.

139.    Dukes, pursuant to the Bill of Sale, which evidences its purchase and ownership of the MetLife Life Policy, has a reasonable likelihood of success in this matter.

140.    Therefore, a preliminary injunction should be issued against preventing Mano from transferring, dissipating, assigning, conveying, encumbering or otherwise disposing of the MetLife Life Policy and ordering that said Policy's ownership interests be returned to Dukes.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enjoin Defendant Mano Enterprises, Inc. from transferring, dissipating, assigning, conveying, encumbering or otherwise disposing of the MetLife Life Policy and order that the

MetLife Life Policy ownership interests be returned to Dukes, and such other relief as this Court deems just and proper.

## COUNT XI – FRAUD

**Dukes Bridge LLC v. Rafael R. Nino, Individually and as Original Trustee of the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 and The Marcos Molina ILIT dated March 20, 2008, and Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company**

141.    Plaintiff incorporates all the foregoing paragraphs by reference as if fully set forth herein.

142.    The Bills of Sale obtained by Dukes regarding the Union Central and MetLife Life Policies legally changed the ownership of said Life Policies from the Trust and 2008 Trust, respectively, to Dukes.

143.    Upon information and belief, Defendants Nino and/or Zormati knew or should have known of Dukes' purchase and subsequent ownership of the Union Central and MetLife Life Policies via the Bills of Sale.

144.    Upon information and belief, Defendants Nino and/or Zormati fraudulently misrepresented to Union Central and MetLife that they maintained the authority to change the ownership of the Life Policies to Mano.

145.    Upon information and belief, in making such fraudulent misrepresentations, Nino and/or Zormati intended to and in fact did induce Union Central and MetLife to change the ownership of the Life Policies to Mano.

146.    Upon information and belief, relying upon Nino and/or Zormati's fraudulent misrepresentations, Union Central and MetLife changed the ownership of the Life Policies to Mano.

147.    In making such fraudulent misrepresentations and inducing Union Central and MetLife to change the ownership of the Life Policies, Nino and/or Zormati caused actual harm to Dukes, as they deprived Dukes of its lawful ownership interests in the Life Policies.

WHEREFORE, Plaintiff Dukes Bridge LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Rafael R. Nino, Individually and as Original Trustee of The 2008 Marcos Molina ILIT dated March 20, 2008, and Bedis Zormati, Individually and as an agent of Rand Group Brokerage and/or Metropolitan Life Insurance Company in an amount in excess of $75,000.00, together with interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

By its attorneys,

COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, PC

BY:

Steven D. Usdin, Esquire
SDNY Bar ID SU3812
30 S. 17th Street, 19th Floor
Philadelphia, PA 19103

Attorney for Plaintiff,
Dukes Bridge LLC

December 3, 2010

#1138991-v1 07292-0008

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **DUKES BRIDGE LLC** | : |
| | :     **CIVIL ACTION** |
| **Plaintiff** | : |
| **v.** | : |
| | :     **NO.** |
| **MARCOS T. MOLINA;** | : |
| | : |
| **RAFAEL R. NINO, Individually and as** | : |
| **Trustee of the Marcos Molina Irrevocable** | : |
| **Life Insurance Trust dated September 7,** | : |
| **2007 and The 2008 Marcos Molina ILIT** | : |
| **dated March 20, 2008;** | : |
| | : |
| **MARCOS MOLINA IRREVOCABLE** | : |
| **LIFE INSURANCE TRUST DATED** | : |
| **SEPTEMBER 7, 2007;** | : |
| | : |
| **THE 2008 MARCOS MOLINA ILIT** | : |
| **DATED MARCH 20, 2008;** | : |
| | : |
| **ROSTER FINANCIAL;** | : |
| | : |
| **RAND BROKERAGE;** | : |
| | : |
| **RAND GROUP BROKERAGE;** | : |
| | : |
| **BEDIS ZORMATI, Individually and as an** | : |
| **agent of Rand Group Brokerage and/or** | : |
| **Metropolitan Life Insurance Company;** | : |
| **and** | : |
| | : |
| **MANO ENTERPRISES, INC.** | : |
| | : |
| **Defendants.** | : |

## AFFIDAVIT BY DAVID GIRARDOT

I, David Girardot, being duly sworn according to law, depose and state as follows:

1.     I am an officer of Dukes Bridge LLC ("Dukes") and am authorized to make this certification on behalf of Dukes.

2.     I have personal knowledge of the matters set forth herein.

### The Union Central Life Policy

3.     During Dukes' normal business operations, Dukes took possession of the position of Aqua Blue Wealth Management, LLC ("Aqua Blue") with respect to the October 9, 2007 Specialty Finance Loan Agreement (the "Union Central Loan Agreement") between Aqua Blue and the Marcos Molina Irrevocable Life Insurance Trust dated September 7, 2007 (the "Trust").

4.     As collateral to the Union Central Loan Agreement, the Trust assigned The Union Central Life Insurance Company Policy No. U000039438 (the "Union Central Life Policy") to Aqua Blue.

5.     The Union Central Loan Agreement obligated the Trust, Marcos T. Molina (the "Insured" or "Molina") and Rafael R. Nino (the "Original Trustee" or "Nino") to repay the principal amount of $464,834.00, plus interest and finance charges, by the maturity date of November 9, 2009.

6.     On or about September 3, 2008, Aqua Blue filed a UCC Financing Statement, which indicated that Aqua Blue maintained a security interest in all assets of the Trust, including the Union Central Life Policy.  A true and correct copy of Aqua Blue's UCC Financing Statement is attached hereto as Exhibit 1.

7.     As of November 9, 2009, the obligations under the Union Central Loan Agreement were not repaid.

8.     On or about December 28, 2009, Dukes filed a UCC Financing Statement Amendment changing the name on the prior UCC Financing Statement filed by Aqua Blue so as to evidence Dukes' security interest in all assets of the Trust, including the Union Central Life Policy.  A true and correct copy of Dukes' UCC Financing Statement Amendment is attached hereto as Exhibit 2.

9.      On February 19, 2010, the Trust, Original Trustee, Dukes and Stan Miller (the "Second Trustee") entered into a Forbearance Agreement, whereby the Original Trustee agreed to pay the amount of $605,418.13 to Dukes so as to satisfy the obligations under the Union Central Loan Agreement.

10.     On the same date, Molina, the Original Trustee, the Second Trustee and Dukes entered into a Non-Contravention Agreement, which set forth certain conditions to the Forbearance Agreement and further defined the relationship between the parties.

11.     On April 6, 2010, I wrote a letter to the Trust, informing it of its breach of its obligations to repay the loan pursuant to the Union Central Loan Agreement. A true and correct copy of my April 6, 2010 letter is attached hereto as Exhibit 3.

12.     On June 10, 2010, I informed the Trust, Molina and the Original Trustee, among others, that Dukes intended to sell the Union Central Life Policy at an auction so as to satisfy the outstanding balance owed to Dukes under the Union Central Loan Agreement.  A true and correct copy of my June 10, 2010 letter is attached hereto as Exhibit 4.

13.     On August 6, 2010, Dukes purchased the Union Central Life policy at an auction for the amount of $739,582.95 and obtained a Bill of Sale evidencing said purchase.  A true and correct copy of the August 6, 2010 Bill of Sale is attached hereto as Exhibit 5.

14.     As of this date, Molina, the Original Trustee and the Trust have failed to fully satisfy their payment obligations pursuant to the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement, and the amount of $832,769.85 is currently due and owing to Dukes.

15.     It is my understanding and belief that Molina, the Original Trustee, Roster Financial, through its agent, David Chauinard ("Chauinard"), Rand Brokerage, through its agent,

3

Shaya Ilowitz ("Ilowitz"), Rand Group Brokerage, through its agent, Bedis Zormati ("Zormati"), and/or Zormati individually and/or as an agent of Metropolitan Life Insurance Company ("MetLife") sold and/or granted ownership interest in the Union Central Life Policy to Mano Enterprises, Inc. ("Mano").

16.    Dukes never consented or authorized the sale and/or transfer of the ownership interest of the Union Central Life Policy to Mano.

17.    Dukes has a lawful ownership interest in the Union Central Life Policy by way of its purchase of said Policy, as evidenced by the Bill of Sale.  See Exhibit 5.

18.    Dukes has a security interest in the Union Central Life Policy pursuant to the Union Central Loan Agreement that is collateralized by the Union Central Life Policy.

19.    It is my understanding and belief that Molina and/or the Original Trustee do not otherwise have sufficient funding to satisfy the substantial obligation owed to Dukes pursuant to the Union Central Loan Agreement, Forbearance Agreement and Non-Contravention Agreement.

### The MetLife Life Policy

20.    During Dukes' normal business operations, Dukes took possession of the position of Aqua Blue with respect to the May 8, 2008 Specialty Finance Loan Agreement (the "MetLife Loan Agreement") between Aqua Blue and The Marcos Molina ILIT dated March 20, 2008 (the "2008 Trust").

21.    As collateral to the MetLife Loan Agreement, the 2008 Trust assigned the MetLife Policy No. 208097103MLU (the "MetLife Life Policy") to Aqua Blue.

22.    The MetLife Loan Agreement obligated the 2008 Trust, Molina and the Original Trustee to repay the principal amount of $349,705.00, plus interest and finance charges, by the maturity date of June 22, 2010.

4

23.     On or about September 9, 2008, Aqua Blue filed a UCC Financing Statement, which indicated that Aqua Blue maintained a security interest in all assets of the 2008 Trust, including the MetLife Life Policy.  A true and correct copy of Aqua Blue's UCC Financing Statement is attached hereto as Exhibit 6.

24.     As of June 22, 2010, the obligations under the MetLife Loan Agreement were not repaid.

25.     On or about December 29, 2009, Dukes filed an UCC Financing Statement Amendment changing the name on the prior UCC Financing Statement filed by Aqua Blue so as to evidence Dukes' security interest in all assets of the 2008 Trust, including the MetLife Life Policy.  A true and correct copy of Dukes' UCC Financing Statement Amendment is attached hereto as Exhibit 7.

26.     On June 22, 2010, I wrote a letter to the 2008 Trust, informing it of its breach of its obligations to repay the loan pursuant to the MetLife Loan Agreement.  A true and correct copy of my June 22, 2010 letter is attached hereto as Exhibit 8.

27.     On August 10, 2010, I informed the 2008 Trust, Molina, Nino, and Zormati, among others, that Dukes intended to sell the MetLife Life Policy at an auction so as to satisfy the outstanding balance owed to Dukes under the MetLife Loan Agreement.  A true and correct copy of my June 10, 2010 letter is attached hereto as Exhibit 9.

28.     On September 2, 2010, Dukes purchased the MetLife Life policy at an auction for the amount of $573,478.21 and obtained a Bill of Sale evidencing said purchase.  A true and correct copy of the September 2, 2010 Bill of Sale is attached hereto as Exhibit 10.

29.     As of this date, Molina, the Original Trustee and the 2008 Trust have failed to fully satisfy their payment obligations pursuant to the MetLife Loan Agreement, and the amount of $590,681.16 is currently due and owing to Dukes.

30.     It is my understanding and belief that Molina, the Original Trustee, Roster Financial, through its agent, Chauinard, Rand Brokerage, through its agent, Ilowitz, Rand Group Brokerage, through its agent, Zormati, and/or Zormati individually and/or as an agent of MetLife sold and/or granted ownership interest in the MetLife Life Policy to Mano.

31.     Dukes never consented or authorized the sale and/or transfer of the ownership interest of the MetLife Life Policy to Mano.

32.     Dukes has a lawful ownership interest in the MetLife Life Policy by way of its purchase of said Policy, as evidenced by the Bill of Sale. See Exhibit 10.

33.     Dukes has a security interest in the MetLife Life Policy pursuant to the MetLife Loan Agreement that is collateralized by the MetLife Life Policy.

34.     It is my understanding and belief that Molina and/or the Original Trustee do not otherwise have sufficient funding to satisfy the substantial obligation owed to Dukes pursuant to the MetLife Loan Agreement.

Sworn and subscribed
before me this _1st_ day
of _December_, 2010.

_Christie Minahan Weimar_

NOTARY PUBLIC
My Commission Expires: _2/28/2011_

DAVID GIRARDOT

Christine Minahan-Weimar
NOTARY PUBLIC
State of Connecticut
My Commission Expires
February 28, 2011

6

EXHIBIT 1

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Heath McLaughlin                          3212023600

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

AQUA BLUE WEALTH MANAGEMENT, LLC

5330 YACHT HAVEN GRANDE

SUITE #206

ST. THOMAS VI 00802

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 11:22 AM 09/03/2008
INITIAL FILING # 2008 2973608

SRV: 080921235

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| MARCOS MOLINA IRREVOCABLE LIFE INSURANCE TRUST | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 300 DELAWARE AVENUE SUITE #714 | WILMINGTON | DE | 19801 | | US |

| | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| TRUST DATED 2007/09/07 | STATUTORY TRUST | DE | DEBTOR IS A TRUST |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

| | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| AQUA BLUE WEALTH MANAGEMENT, LLC | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 5330 YACHT HAVEN GRANDE SUITE #206 | ST. THOMAS | VI | 00802 | | US |

4. This FINANCING STATEMENT covers the following collateral:

All assets of the Debtor!

10. miscellaneous: Union Central Policy #0000039438

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum                [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]        [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

Aqua Blue Lending

# EXHIBIT 2

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

V. Cranny                                    2035170100

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

DUKES BRIDGE LLC

1055 WASHINGTON BLVD.

8TH FLOOR

STAMFORD CT 06901

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 02:56 PM 12/28/2009
INITIAL FILING # 2008 2973608
AMENDMENT     # 2009 4142706
SRV: 091140414

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2008 2973608 | |

| 2. | TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|
| 3. | CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 4. | ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9 |

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AQUA BLUE WEALTH MANAGEMENT, LLC | | | |

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) or ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DUKES BRIDGE LLC | | | |

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1055 WASHINGTON BLVD. 8TH FLOOR | STAMFORD | CT | 06901 | US |

| 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION |
|---|---|
| | |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT

DUKES BRIDGE LLC

10. OPTIONAL FILER REFERENCE DATA

Molina UC U000039438

**EXHIBIT 3**

# DUKES BRIDGE LLC
■1055 Washington Boulevard, 8th Floor ■ Stamford ■ CT 06901■

April 6, 2010


<u>**VIA FEDEX**</u>

Marcos Molina Irrevocable Life Insurance Trust
c/o Stan Miller
10809 Executive Center Drive, Suite 205
Little Rock, AR 72211

> Re:    Specialty Finance Loan Agreement dated October 9, 2007 between the Marcos
>        Molina Irrevocable Life Insurance Trust (the "Trust") and Aqua Blue Wealth
>        Management, LLC
>        Loan Maturity Date: November 9, 2009
>        Collateral Description: Union Central Life Insurance Policy #U000039438
>        Insured: Marcos Molina


Dear Mr. Miller:

   Pursuant to the terms of the Specialty Finance Loan Agreement as assigned to Dukes
Bridge LLC (the "Agreement"), the Assignment of Life Policy as Collateral (the "Assignment"),
the Acknowledgement, Waiver, and Release, the Security Agreement (the "Security
Agreement") and the Trustee Side Letter (collectively the "Loan Documents") relating to the
above-referenced matters, the Maturity Date under the Agreement was **November 9, 2009**. Lack
of payment by that date constituted a default under the Agreement. Per Section 9.2(a) of the
Agreement you had 60 days to cure the default (January 9, 2010). As of the date of this letter we
have not received payment. Dukes Bridge LLC ("Dukes Bridge") hereby demands full payment
of the Principal Debt and all Finance Charges due and owing, along with additional advances and
per diem interest through the actual date of payment, within fifteen (15) days of the date of this
letter which is **April 21, 2010.**

   As of the date of this letter the sum of **$659,399.99** constituting principal balance,
advances and finance charges to date, is due and outstanding.

   Beginning on April 2, 2010 and continuing thereafter until payment, **an additional per
diem interest will accrue at daily periodic rate of $234.69 each day** through the actual date of
payment.

   If you do not make full and complete payment to us prior to the time that any future
premiums are due, we may, but are not required to, pay such premiums, and in that event, such
payments are treated as advances and together with applicable interest will be added to your
balance owed to us.

---

■Telephone (203) 517 0936, Fax (203) 517 0689, E-mail Address info@dukesbridge.com■

# DUKES BRIDGE LLC
■1055 Washington Boulevard, 8ᵗʰ Floor ■ Stamford ■ CT 06901■

Please consider this correspondence as your formal written notice and demand for payment under Section 9.2(a) of the Agreement of the above specified amounts along with the additional per diem interest that continues to accumulate until final payment is received. Additionally, please accept this notice that Dukes Bridge reserves its rights under the Agreement and the Security Agreement to liquidate the Policies by public sale.

Dukes Bridge reserves all of its rights and remedies available to it, including those enumerated by the Loan Documents and any other governing agreements. Nothing contained in this letter shall be deemed a waiver of any default or any event of default not specifically listed above, or waiver of any right, remedy, or recourse available to Dukes Bridge under any election of remedies for the defaults listed above or any other defaults which may exist with respect to the indebtedness referenced herein and other obligations. Nothing in this letter shall be construed as a charge or demand for more interest than applicable usury laws allow or any amount which is not recoverable or chargeable, and if any amount is stated or referred to in this letter as being due, owing, or payable which exceeds the maximum amount of interest allowed by applicable law or which is not lawfully recoverable or chargeable under the law, then only so much of that amount as does not exceed such maximum amount and is lawfully chargeable or recoverable shall be considered as being demanded by this letter, and this sentence governs and controls over any conflicting or inconsistent provision of this letter.

Should you need an updated total prior to your payment, please let me know.

Similarly, if you have any questions regarding this matter, please do not hesitate to contact me.

I look forward to your response.

Very truly yours,

David A. Girardot

cc: Marcos Molina
    212-29 Hillside Ave.
    Queens Village, NY 11427

**EXHIBIT 4**

# DUKES BRIDGE LLC

■1055 Washington Boulevard, 8th Floor ■ Stamford ■ CT 06901 ■

June 10, 2010

To the Addressees listed on Schedule A

Re: Specialty Finance Loan Agreement dated October 9, 2007 between the Marcos
Molina Irrevocable Life Insurance Trust (the "Trust") and Aqua Blue Wealth
Management, LLC
Loan Maturity Date: November 9, 2009
Collateral Description: Union Central Life Insurance Policy #U000039438
Insured: Marcos Molina

Gentlemen:

I am the Controller of Dukes Bridge LLC ("Dukes Bridge"). We are the Secured Party with
respect to the above referenced loan. As you have been notified previously, this loan is in
default and the outstanding balance remains unpaid. As Secured Party, Dukes Bridge is
exercising its rights under the Credit Agreements.

This letter is to inform you that the policy in the trust will be sold at an auction to be held on July
6, 2010. The enclosed Notice provides further details about the Auction.

If you have any questions I can be reached at (203)517-0025.

Sincerely,

David A. Girardot

## DUKES BRIDGE LLC
■1055 Washington Boulevard, 8ᵗʰ Floor ■ Stamford ■ CT 06901 ■

### Schedule A

Marcos Molina Irrevocable Life Insurance Trust
c/o Stan Miller
10809 Executive Center Drive, Suite 205
Little Rock, AR 72211

Marcos Molina Irrevocable Life Insurance Trust
c/o Stan Miller
300 Delaware Avenue, Suite #714
Wilmington, DE 19801

Marcos Molina
212-29 Hillside Ave.
Queens Village, NY  11427

Theresa Molina
212-29 Hillside Ave.
Queens Village, NY  11427

Rafael Nino
184-02 Hillside Avenue
Hollis, NY 11432

# EXHIBIT 5

# BILL OF SALE

This Bill of Sale is made and delivered by Howard Rosenthal, as Auctioneer (the "Auctioneer") this 6ᵗʰ day of July, *August*, 2010 to and in favor of Dukes Bridge LLC ("Purchaser").

For $ 739,582.95 (credit bid) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Auctioneer does grant, convey, transfer, bargain, sell and deliver and set over unto the Purchaser, and unto its successors and assigns forever, to have and to hold, all of Dukes Bridge LLC, a Delaware Limited Liability Company, (the "Secured Party") right, title and interest of, in and to certain collateral for the Debtor's obligations under a certain Special Finance Loan Agreement dated January 8, 2008  by and among Aqua Blue Wealth Management, LLC who's interest in the collateral was assigned to the Secured Party on November 2, 2009 and Marcos Molina Irrevocable Life Insurance Trust (the "Debtor") and the other Transaction Documents (as defined in the Agreements) including, without limitation, (1) all of its interests in certain life insurance policies issued by The Union Central Life Insurance Company policy number U000039438 insuring the life of Marcos T. Molina (the "Policies") and (2) all of its interests in and to the beneficial interests in such Policies including the rights to any and all benefits and proceeds of such Policies and any other security interests granted under the Agreements and Transaction Documents above-described together with any and all other rights, title and interest in and to any collateral described in the said documents by the Debtor to the Secured Party.

The assets are being sold on an **"AS IS WHERE IS"** basis, without recourse, warranty or guaranty whether expressed or implied.  The Secured Party and the Auctioneer do not and will not make any representations or warranties with respect to the Assets and the Sale of the Assets is specifically subject to all taxes, liens and encumbrances other than those of the Secured Party and is subject to any and all claims, assessments, liabilities, taxes, liens or encumbrances if any that may exist against the Assets under the UCC or other applicable law.  Without limiting the generality of the foregoing the Secured Party and the Auctioneer expressly disclaim all representations or warranties relating to the origination of any policy, the presence of insurable interest or the death benefits available.

## BILL OF SALE

The Bill of Sale is delivered by Auctioneer to Purchaser in the State of New York and shall be governed by the law of that state.

IN WITNESS WHEREOF, the Auctioneer has caused this instrument to be executed this 6th day of August 2010.

**HOWARD ROSENTHAL, AUCTIONEER**

By _____
Name:
Title

**CONSENTED TO BY THE SECURED PARTY,
DUKE BRIDGE LLC**

By _____
Name: David Girardot
Title: Controller

**EXHIBIT 6**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] | |
|---|---|
| Heath McLaughlin | 3212023600 |

**DELAWARE DEPARTMENT OF STATE**
**U.C.C. FILING SECTION**
**FILED 09:27 AM 09/09/2008**
**INITIAL FILING # 2008 3036538**

**SRV: 080935870**

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

AQUA BLUE WEALTH MANAGEMENT, LLC

5330 YACHT HAVEN GRANDE

SUITE #206

ST. THOMAS VI 00802

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| THE 2008 MARCOS MOLINA ILIT | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 300 DELAWARE AVENUE SUITE #714 | WILMINGTON | DE | 19801 | US |

| | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| TRUST DATED 2008/03/20 | STATUTORY TRUST | DE | DEBTOR IS A TRUST |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | | | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AQUA BLUE WEALTH MANAGEMENT, LLC | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5330 YACHT HAVEN GRANDE SUITE #206 | ST. THOMAS | VI | 00802 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

**All assets of the Debtor!**

---

10. miscellaneous: MetLife Policy #208097103MLO

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

Aqua Blue Lending

**EXHIBIT 7**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

V. Cranny                                                    2035170100

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

DUKES BRIDGE LLC

1055 WASHINGTON BLVD.

8TH FLOOR

STAMFORD CT 06901

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 09:58 AM 12/29/2009
INITIAL FILING # 2008 3036538
AMENDMENT  # 2009 4151004
SRV: 091142982

**1a. INITIAL FINANCING STATEMENT FILE #**

2008 3036538

**1b.** This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| | |
|---|---|
| **6a. ORGANIZATION'S NAME** | |
| OR | AQUA BLUE WEALTH MANAGEMENT, LLC |

| **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | |
|---|---|
| **7a. ORGANIZATION'S NAME** | |
| OR | DUKES BRIDGE LLC |

| **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1055 WASHINGTON BLVD. 8TH FLOOR | STAMFORD | CT | 06901 | US |

| **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** |
|---|---|
| | |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT**

Dukes Bridge LLC

**10.OPTIONAL FILER REFERENCE DATA**

Molina ML 208097103MLU

# EXHIBIT 8

# DUKES BRIDGE LLC

■1055 Washington Boulevard, 8th Floor ■ Stamford ■ CT 06901■

June 22, 2010

**VIA FEDEX**

The Marcos Molina Irrevocable Life Insurance Trust
c/o Stan Miller
10809 Executive Center Drive, Suite 205
Little Rock, AR 72211

Re:   Specialty Finance Loan Agreement dated May 8, 2008 between the Marcos
Molina Irrevocable Life Insurance Trust (the "Trust") and Aqua Blue Wealth
Management, LLC
Loan Maturity Date: June 22, 2010
Collateral Description: Metropolitan Life Insurance Policy #208097103MLU
Insured: Marcos Molina

Dear Mr. Miller:

Pursuant to the terms of the Specialty Finance Loan Agreement as assigned to Dukes
Bridge LLC (the "Agreement"), the Assignment of Life Policy as Collateral (the "Assignment"),
the Acknowledgement, Waiver, and Release, the Security Agreement (the "Security
Agreement") and the Trustee Side Letter (collectively the "Loan Documents") relating to the
above-referenced matters, the Maturity Date under the Agreement was **June 22, 2010**.  Lack of
payment by that date constituted a default under the Agreement.  Per Section 9.2(a) of the
Agreement you have 60 days to cure the default (August 22, 2010).  As of the date of this letter
we have not received payment.  Dukes Bridge LLC ("Dukes Bridge") hereby demands full
payment of the Principal Debt and all Finance Charges due and owing, along with additional
advances and per diem interest through the actual date of payment, within sixty (60) days of the
date of this letter which is **August 22, 2010.**

As of the date of this letter the sum of **$522,578.06** constituting principal balance,
advances and finance charges to date, is due and outstanding.

Beginning on June 23, 2010 and continuing thereafter until payment, **per diem interest
will accrue at daily periodic rate of $142.86 each day** through the actual date of payment.

If you do not make full and complete payment to us prior to the time that any future
premiums are due, we may, but are not required to, pay such premiums, and in that event, such
payments are treated as advances and together with applicable interest will be added to your
balance owed to us.

# DUKES BRIDGE LLC
■1055 Washington Boulevard, 8th Floor ■ Stamford ■ CT 06901■

Please consider this correspondence as your formal written notice and demand for payment under Section 9.2(a) of the Agreement of the above specified amounts along with the additional per diem interest that continues to accumulate until final payment is received. Additionally, please accept this notice that Dukes Bridge reserves its rights under the Agreement and the Security Agreement to liquidate the Policies by public sale.

Dukes Bridge reserves all of its rights and remedies available to it, including those enumerated by the Loan Documents and any other governing agreements. Nothing contained in this letter shall be deemed a waiver of any default or any event of default not specifically listed above, or waiver of any right, remedy, or recourse available to Dukes Bridge under any election of remedies for the defaults listed above or any other defaults which may exist with respect to the indebtedness referenced herein and other obligations. Nothing in this letter shall be construed as a charge or demand for more interest than applicable usury laws allow or any amount which is not recoverable or chargeable, and if any amount is stated or referred to in this letter as being due, owing, or payable which exceeds the maximum amount of interest allowed by applicable law or which is not lawfully recoverable or chargeable under the law, then only so much of that amount as does not exceed such maximum amount and is lawfully chargeable or recoverable shall be considered as being demanded by this letter, and this sentence governs and controls over any conflicting or inconsistent provision of this letter.

Should you need an updated total prior to your payment, please let me know.

Similarly, if you have any questions regarding this matter, please do not hesitate to contact me.

I look forward to your response.

Very truly yours,

David A. Girardot

cc:  Marcos Molina
     212-29 Hillside Avenue
     Queens Village, NY  11427

# EXHIBIT 9

**DUKES BRIDGE LLC**
■1055 Washington Boulevard, 8th Floor ■ Stamford ■ CT 06901 ■

August 10, 2010

To the Addressees listed on Schedule A

Re:   Specialty Finance Loan Agreement dated May 8, 2008 between the 2008 Marcos
      Molina ILIT (the "Trust") and Aqua Blue Wealth Management, LLC
      Loan Maturity Date: June 22, 2010
      Collateral Description: Metropolitan Life Insurance Policy #208097103MLU
      Insured: Marcos Molina

Gentlemen:

I am the Controller of Dukes Bridge LLC ("Dukes Bridge"). We are the Secured Party with
respect to the above referenced loan. As you have been notified previously, this loan is in
default and the outstanding balance remains unpaid. As Secured Party, Dukes Bridge is
exercising its rights under the Credit Agreements.

This letter is to inform you that the policy in the trust will be sold at an auction to be held on
September 2, 2010. The enclosed Notice provides further details about the Auction.

If you have any questions I can be reached at (203)517-0025.

Sincerely,

David A. Girardot

# DUKES BRIDGE LLC

■1055 Washington Boulevard, 8th Floor ■ Stamford ■ CT 06901 ■

## Schedule A

Rafael Nino
184-02 Hillside Ave.
Jamaica, NY  11432

Marcos Molina
212-29 Hillside Ave.
Queens, NY  11427

Marcos Molina
212-29 Hillside Ave.
Bellerose Manor, NY  10128

Jenny B. Molina                          Jesus A. Molina
212-29 Hillside Ave.                      212-29 Hillside Ave.
Bellerose Manor, NY  10128               Bellerose Manor, NY  10128

Bedis Zormati
420 Lexington Ave.
15th Floor
New York, NY  10170

Bedis Zormati
290 Collins Ave.
Apt 5H
Mount Vernon, NY  10552

2008 Marcos Molina ILIT
Stan Miller
10809 Executive Center Drive
Suite 205
Little Rock, AR  72211

2008 Marcos Molina ILIT
Stan Miller
300 Delaware Ave.
Suite 714
Wilmington, DE  19801

## NOTICE OF SALE

**NOTICE IS HEREBY GIVEN** by Dukes Bridge LLC[1] (the "Secured Party")
that pursuant to (a) Section 9-610 of the Uniform Commercial Code ("UCC") as enacted in the
State of New York; and (b) the agreements respectively known as the Specialty Finance Loan
Agreement dated May 8, 2008 by and among Aqua Blue Wealth Management, LLC who's
interest in the collateral was assigned to the Secured Party on November 2, 2009 and the 2008
Marcos Molina ILIT (the "Debtor")  and the other Transaction Documents (as defined in the
Agreements) the Secured Party will offer for sale to the public (the "Auction") all of its right,
title and interest of, in and to certain collateral for the Debtor's obligations under the above
agreements and the other Transaction Documents including, without limitation, (1) all of its
interests in certain life insurance policies (the "Policies") and (2) all of its interests in and to the
beneficial interests in such Policies including the rights to any and all benefits and proceeds of
such Policies and any other security interests granted under the Agreements and Transaction
Documents above-described together with any and all other right, title and interest in and to any
collateral described in the said documents by the Debtor to the Secured Party.

The assets are being sold on an **"AS IS WHERE IS"** basis pursuant to the
following terms and conditions.

---

[1]Dukes Bridge LLC was assigned all right, title and interest in the collateral via the certain Release
and Settlement Agreement dated November 2, 2009 by and among Dukes Bridge LLC and Aqua Blue Wealth
Management, LLC.

**Auction Date: September 2, 2010**

**Time of Auction:  10:00 am**

**Location of Auction:**
Smith, Gambrell & Russell, LLP
250 Park Ave Suite 250 New York, NY 10177

**TERMS OF SALE**

1.       The assets will be offered for sale on a policy by policy basis.  The successful bidder at the Auction must be prepared to purchase each policy and all the beneficial interests and other assets described in the Collateral Agreements above-mentioned.   The participants at the auction will also have the opportunity to submit a bid for all of the assets to be sold at the auction.  The assets will be sold to the bidder that makes the highest and best bid for that asset at the Auction, or, if a bidder submits a bid for all of the assets that is greater than the sum of bids for each individual asset, all the assets will be sold to such bidder.  The Secured Party reserves the right to reallocate the Policies or to sell policies and assets separately.

2.       Subject to executing confidentiality agreements as the Secured Party in its sole discretion deems appropriate, parties interested in bidding at the Auction may obtain additional information and detail concerning the assets by contacting the Secured Party as set forth below.

3.       To participate in the auction, the Secured Party requests that interested parties submit an indication of interest to the Controller for the Secured Party, Mr. David A. Girardot, at the address shown below, on or before August 27, 2010.  After receiving indications of interest the Secured Party will contact parties to request an initial deposit which initial deposit shall equal $250,000.00.  Any such initial deposit will be held in escrow by the Attorneys for Secured Party.  If a bidder withdraws prior to the Auction, the additional deposit will be

returned.  If a bidder submits a winning bid but does not provide the required deposit or the balance (as described below) the initial deposit shall be forfeited.

4.      The assets are being sold on a **"AS IS WHERE IS"** basis, without recourse, warranty or guaranty whether expressed or implied.  The Secured Party does not and will not make any representations or warranties with respect to the Assets and the Sale of the Assets is specifically subject to all taxes, liens or encumbrances other than those of the Secured Party and is subject to any and all claims, assessments, liabilities, taxes, liens or encumbrances if any that may exist against the Assets under the UCC or other applicable law.  Without limiting the generality of the foregoing the Secured Party expressly disclaims all representations or warranties relating to the origination of any policy, the presence of insurable interest or the death benefits available.

5.      In order to participate in the Auction each potential bidder must be physically present at the auction and demonstrate to the satisfaction of the Secured Party that each such bidder has the financial means to close on any bid made at the auction.  The Secured Party reserves the right to reject any bid or all bids at the Auction and to announce such other terms at the Auction as may be commercially reasonable in the Secured Party's discretion or to accept non-conforming bids.  Further, the Secured Party reserves the right to cancel, postpone or adjourn the Auction by announcement made at the Auction, either before or after the commencement of the bidding, without written notice or further publication.  The Secured Party reserves the right to credit bid any portion of its secured indebtedness then outstanding the Auction for the Assets, either directly or through its designee/assignee.  The Secured Party reserves the right to implement such other terms or conditions at the Auction or regarding the

3

auction process as the Secured Party in its sole discretion determines to be commercially reasonable under the circumstances.

6.     The Secured Party will determine the highest and best bid made at the Auction for each Asset or any portion thereof (the "Winning Bid"). The Secured Party reserves the right to select the second highest and best bid at the Auction as a backup bid for each of the Assets or all of the Assets. Unless the Winning Bid is made by the Secured Party or its designee/assignee via a credit bid, the party submitting such Winning Bid must provide at the Auction as cashier's, bank or certified check made payable to the Secured Party in an amount not less than 25% of the Winning Bid. The successful bidder shall pay whatever the balance of the Winning Bid by wire transfer or certified funds within 24-hours of the conclusion of the Auction. If the successful bidder does not pay the balance by the payment deadline, the deposit and the initial deposit will be forfeited to the Secured Party as liquidated damages. Following such default the Secured Party may sell the Assets to the respective backup bidder, if any, without further notice. Upon payment in full of the Winning Bid by the successful bidder, the Secured Party will cause to be delivered to such Successful Bidder or its designees a Bill of Sale covering all the Assets sold to that Bidder.

Auctioneer:

Howard Rosenthal
3 East 65th Street - Suite 2
New York NY 10021
(212) 570-6999

**REQUEST FOR FURTHER INFORMATION.** All of the inquiries concerning this Notice of Sale and the terms and conditions of the sale shall be made to David Girardot, 1050 Washington Blvd Stamford, CT 06901 (203) 517-0025 david.girardot@dukesbridge.com.

4

The Secured Party reserves the right to require any person making such a request to disclose the person or entity on whose behalf such information is being sought and to maintain the confidentiality of the information provided.

**EXHIBIT 10**

## BILL OF SALE

This Bill of Sale is made and delivered by Howard Rosenthal, as Auctioneer (the "Auctioneer") this 2nd day of September, 2010 to and in favor of Dukes Bridge LLC ("Purchaser").

For $ _573,478 21_ (credit bid) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Auctioneer does grant, convey, transfer, bargain, sell and deliver and set over unto the Purchaser, and unto its successors and assigns forever, to have and to hold, all of Dukes Bridge LLC, a Delaware Limited Liability Company, (the "Secured Party") right, title and interest of, in and to certain collateral for the Debtor's obligations under a certain Special Finance Loan Agreement dated May 8, 2008 by and among Aqua Blue Wealth Management, LLC who's interest in the collateral was assigned to the Secured Party on November 22, 2009 and The 2008 Marcos Molina ILIT (the "Debtor") and the other Transaction Documents (as defined in the Agreements) including, without limitation, (1) all of its interests in certain life insurance policies issued by Metropolitan Life Insurance Company policy number 208097103MLU insuring the life of Marcos T. Molina (the "Policies") and (2) all of its interests in and to the beneficial interests in such Policies including the rights to any and all benefits and proceeds of such Policies and any other security interests granted under the Agreements and Transaction Documents above-described together with any and all other rights, title and interest in and to any collateral described in the said documents by the Debtor to the Secured Party.

The assets are being sold on an **"AS IS WHERE IS"** basis, without recourse, warranty or guaranty whether expressed or implied.  The Secured Party and the Auctioneer do not and will not make any representations or warranties with respect to the Assets and the Sale of the Assets is specifically subject to all taxes, liens and encumbrances other than those of the Secured Party and is subject to any and all claims, assessments, liabilities, taxes, liens or encumbrances if any that may exist against the Assets under the UCC or other applicable law.  Without limiting the generality of the foregoing the Secured Party and the Auctioneer expressly disclaim all representations or warranties relating to the origination of any policy, the presence of insurable interest or the death benefits available.

## BILL OF SALE

The Bill of Sale is delivered by Auctioneer to Purchaser in the State of New York and shall be governed by the law of that state.

IN WITNESS WHEREOF, the Auctioneer has caused this instrument to be executed this 2nd day of September 2010.

**HOWARD ROSENTHAL, AUCTIONEER**

By _____
Name:
Title

**CONSENTED TO BY THE SECURED PARTY, DUKE BRIDGE LLC**

By _____
Name:      David Girardot
Title:      Controller